# United States District Court, Middle District Florida

Catherine F Velardo

Plaintiff,

v.

Nuvell Auto Finance, National Auto Finance, Fidelity Warranty Services Inc., JM&A and Bob Dance Automotive Group

Defendants

Case No.  6:08-CV-806-ORL-31-DAB

May 19, 2008

## COMPLAINT AND DEMAND FOR JURY TRIAL

**NOW COMES** the plaintiff Catherine F Velardo ("Mrs. Velardo") Pro-se, and for plaintiffs complaint against Defendants: National Auto Finance ("Lender Assignor"); Nuvell Auto Finance, ("Assignee"); Fidelity Warranty Services Inc., JM&A and Bob Dance Automotive Group (Bob Dance), do allege and affirmatively state as follows:

## PRELIMINARY STATEMENT

This is an action for damages brought by an individual consumer against the defendants' for violations of *The Truth in Lending Act 15 U.S.C. § 1601 et seq.; 15 U.S.C. 1611; 15 U.S.C. 41; 18 U.S.C. § 1961 et seq.* under 18 U.S.C. § 1964; the *Florida Civil Remedies for Criminal Practices Act (Florida RICO), F.S. section 772.101, et seq.;* under the *Florida Unfair Trade and*

1

*Deceptive Practices Act, F.S. section 501.201, et seq.;* and under the common law of fraud and negligence.

## JURISDICTION AND VENUE

Jurisdiction of this Court arises under *15 U.S.C. § 1601 (a); 15 U.S.C. 41 and 28 U.S.C. § 1331.* Venue lies properly in this district pursuant to *28 U.S.C. § 1391 (b).*

## PARTIES

Plaintiff: Catherine F Velardo ("Plaintiff") is an individual that is a Florida Resident.

Defendants:

 i. <u>Nuvell Financial Services LLC</u>. ("Lender/Assignor") Is a wholly owned subsidiary of General Motors Acceptance Corporation (GMAC) which is a financial services holding company, and is qualified to do business and regularly conducts business in the State of Florida.
 ii. National Auto Finance Company, Inc, ("Assignee") is a GMAC Financial Service Company qualified to do business and regularly conducts business in the State of Florida.
 iii. Bob Dance Automotive Group is a licensed Automotive Dealer and is qualified to do business and regularly conducts business in the State of Florida.
 iv. Fidelity Warranty Services Inc. a company of JM&A Group, F&I products in the automotive industry qualified to do business and regularly conducts business in the State of Florida.

2

  *v.*  JM&A Group, JM&A Group is a division of JM Family Enterprises, Inc. one of the largest providers of F&I products in the automotive industry, consisting of four finance, insurance, and service-related companies qualified to do business and regularly conducts business in the State of Florida.

## FACTS OF THE CASE

1. Plaintiff Velardo had decided, with her husband, to purchase for their son a high School graduation present in the form of a used automobile, the automobile would serve as his means for transportation to and from the Florida university he would now be attending.

2. The Velardo's had researched and found a used Hyundai Sonata 2004, with very low miles, that had a full 3 years remaining on it's bumper to bumper warranty and was advertised by Bob Dance Hyundai for $12,500.00.

3. Mrs. Velardo went to purchase the vehicle with her son, Amon Finocchiaro, as her husband was not available at the time and she wanted to purchase the vehicle before it was sold or before the advertised sale would expire.

4. During the sales process Mrs. Velardo was confirmed, by salesman Edgar Castaneda, that the vehicle sales price was the same as advertised in the newspaper, the sales price would be $12,500.00. Mrs. Velardo agreed to the price and was directed to the finance office.

5. In the sales office she was greeted by finance manager Marc A Occhipinti. Mr. Occhipinti advised Mrs. Velardo that in order for her to be financed, through the particular finance house that had agreed to finance the vehicle, National Auto Finance, that she had to accept the following: "Gap insurance" in the amount of $495.00;

Extended Warranty Services in the amount of $1048.00; and Tire Guard "tire warranty service" in the amount of $179.00.

6. Mrs. Velardo clearly stated to finance manager that she needed to keep the payments on the vehicle below $300.00 per month and that she did not feel she needed nor did she want the add-ons.

7. Again Mr. Occhipinti told Mrs. Velardo, that if she would not accept the back end products he would not be able to finance her, as that was the condition that the finance house had made in order for them to "pick up" her contract.

8. Mrs. Velardo was instructed by Bob Dance to sign a blank installment sales contract because the dealership said it would finish all paper work on the following day, that it was late and the dealership was closing. Instead, Mrs. Velardo insisted in completing all paperwork at that time and hesitantly signed an installment sales contract form for Bob Dance Dodge Inc.

9. Regardless of her protest, the installment sales contract generated by Mr. Occhipinti contained all the add-ons she had already specified she did not want. Mrs. Velardo felt compelled to sign as she had again been told they could not and would not finance her any other way.

10. Not only had the dealer and the finance house added the undesired back end products, thereby inflating the cost of the vehicle, but they had committed fraud in the installment sales contract itself.

11. Plaintiffs found that the cash price of the vehicle $12,500.00, including the $1.50 Florida Waste & Battery fee, should have reflected the amount of $12,501.50 plus the $800.06 sales tax, (Tax according to FL Statute under Chap. 212), for a cash price total of

$13,301.56. Instead in the Installment Sales Contract and Truth in Lending Disclosure it shows an inflated Cash Price of $13,895.09. A cash price inflated by over $593.53. (See Exhibit D)

12. The real cash price plus sales tax should have reflected the amount of $12,501.50 plus $800.06 for a total cash price of $13,301.56.

13. After deducting the $1,000.00 cash deposit, paid by plaintiff, the correct unpaid balance of cash price of 13,301.56 minus the One thousand dollar (1,000.00) deposit should have reflected the accurate amount of $12301.56, instead it reflects a fraudulent amount of $12,895.09. The plaintiff had been additionally defrauded by over $593.53

14. Mr. Velardo examined the inflated fraudulent contract and immediately called Bob Dance to complain.

15. Mr. Velardo spoke to Mr. Occhipinti, and complained about the fraudulent amounts in the contract and the back end add-ons demanding they be immediately cancelled. Mr. Velardo was told, point blank, that Bob Dance could not cancel the back end contracts because National Auto Finance would only agree to finance Mrs. Velardo contingent on her accepting those add-ons and accepting " the contract as it was written", absolutely under no other condition would they finance.

16. Mr. Velardo Proceeded by sending a certified registered letter to both National Auto Finance and Bob Dance Dodge demanding cancellation of these back end products and clarification of the inflated costs in the contract.

17. Both letters were ignored and an answer was never provided by neither Bob Dance nor National Auto Finance/Nuvell. (See Exhibits A and B).

18. Mr. Velardo proceeded to send a letter of demand stating that he would take legal action unless these contracts were cancelled, buyer reimbursed, and new retail sales agreement established that would, under the Truth In Lending Act, reflect the new terms excluding the packed back end add-ons.

19. Finally, after months of complaining and letters written, Mrs. Velardo was informed by Bob Dance, that they would "**refund their portion**" of the add-on contracts to the warranty service companies and that these would, in turn, return the funds to National Auto Finance/Nuvell.

20. Mrs. Velardo never once heard from National Auto Finance nor Nuvell, (assigned loan servicer), she was never returned any funds, nor was she ever sent a new financing retail installment agreement or TILA that reflected these changes as she had demanded.

21. Mrs. Velardo has refused to continue paying on a void credit agreement, void by both state as well as federal standards.

22. National Auto Finance response has been to initiate a state complaint for replevin of the vehicle even though Plaintiff has notified both the state court and the defendants that they were proceeding to repossess under a defective title.

23. Upon receipt of documentation provided by Counsel for National Auto Finance as part of their state complaint for replevin action, Plaintiffs noticed a very important letter that National Auto Finance supposedly submitted to plaintiffs on the date of May 10, 2006, a letter that Plaintiffs never received or were ever privy of. (See Exhibit E)

24. The letter is a change to the Installment Sales Contract that "Corrected", under the Itemization of Amount of Financed, Other Charges, to now reflect: Paid to Bob Dance

the payment of $495.00 for GAP insurance instead of paid to JM&A as originally disclosed in the Installment Sales Contract.

25. Plaintiffs were not made aware of this information till National Auto Finance documented to state court for Replevin action. The plaintiffs' argue that Bob Dance is not licensed to sell insurance in the state of Florida, and by making financing contingent upon the acceptance of this product fraud is apparent on the record by not only Bob Dance but by the finance company, as assignee of the retail sales contract which it is financing, is liable for any violation that is apparent on the face of the contract. 15 U.S.C. sec. 1641(a).

26. Mrs. Velardo's has thus initiated this complaint in federal court for actual damages, statutory damages and treble damages in excess of $15,000, exclusive of costs and fees.

27. These damages supersede and are above defendants' claims to vehicle title by violations of both state and federal consumer protection law violations.

## COUNT ONE: FL CIVIL RICO

-Bob Dance, National Auto Finance, Nuvell, Fidelity Warranty Services Inc. and JM&A -

28. On or about May 6, 2006, Catherine F Velardo entered Bob Dance Dodge and discussed purchasing a used 2004 Hyundai Sonata automobile, (Vin number: KMHWF25HX4A998088), with salesman Edgar Castaneda.

29. Velardo and Castaneda agreed to a sale price of $12,500.00 and to a loan term of 60 months with a monthly loan payoff amount of no more than $300.

30. Velardo was informed by Bob Dance Dodge, that the car included a factory bumper to bumper warranty of 10yr/100,000 miles for the original owner and 5yrs/60,000 miles 2nd

owner, Velardo did not agree to pay for an extended warranty which would just duplicate this coverage.

31. However, a finance and insurance manager of Bob Dance Dodge, who was trained by Bob Dance in selling back-end products such as extended warranties, packed the Velardo contract with the following: a seven-year, 70,000-mile warranty through a product known as Royal Protection Plan by Fidelity Warranty Services; Total Loss Protection Program by JM&A Group; and Fidelity Warranty Services Inc. for tire coverage.

32. Bob Dance Dodge informed Velardo that she'd either accept the added cost for these extended warranty services, or she would not be financed. These added costs would add an additional $1,722.00 in amount financed.

33. Velardo was told by the finance manager for Bob Dance, Marc A Occhipinti that he had spoken to the underwriter at the finance house which would be financing the vehicle and that he had been informed that they would not even consider financing the vehicle unless Velardo accepted the increased warranty add-ons as they were added by the dealership. He said the finance source made clear that her financing was contingent on her accepting the deal, the way it had been drawn up by Bob Dance Dodge, or not be financed.

34. By charging Velardo $1,722 for an extended warranty that they did not request, and by advising Velardo that her financing was contingent upon her accepting these "packed back end products", Bob Dance made misleading representations, omitted material facts in the offer of credit and engaged in acts, practices and courses of business that operated as a fraud and deception upon Velardo in connection with the offer of credit and in violation of F.S. section 817.7005(4).

35. Plaintiff believes and therefore avers that Bob Dance retained or received a portion of the $1,722.00 sale price as a commission or other profit on the sale of the service contract to Mrs. Velardo.

36. Bob Dance breached their fiduciary duties to Mrs. Velardo by directly or indirectly retaining part of the purchase price of the service contracts they sold.

37. National Auto Finance is liable under the FTC Notice for the statutory violations and breaches of fiduciary duty of Bob Dance who sold these packed Fidelity Warranty Services /JM&A Gap Insurance and assigned their installment contracts to National Auto Finance.

38. Fidelity Warranty Services Inc. and JM&A Group are responsible under the doctrine of respondeat superior for the statutory violations and breaches of fiduciary duty of Bob Dance.

39. Plaintiffs are liable for unjust enrichment, on the ground that these Warranty and Insurance contracts are void, when none of the Plaintiffs are authorized to sell this type of insurance in Florida.

40. Bob Dance and National Auto Finance engaged in a pattern of questionable activity under F.S. section 772.102(4), involving Velardo as well as numerous other customers during the past five years, which questionable activity had the same or similar purposes, results, participants, victims and methods of commission and are interrelating by distinguishing characteristics (fraud, deception and product packing) so that they are not isolated events. The plaintiffs will prove this with discovery at trial.

41. Bob Dance and National Auto, with criminal intent, received proceeds derived directly and indirectly from the pattern of criminal activity set forth in the paragraphs listed

above, as Bob Dance and National Auto obtained profits from the placement of vehicle installment loans and from the packing of forced back-end products through inflated warranty costs, all in violation of F.S. section 772.103.

42. Velardo has been injured as a direct result of the prohibited activities in that they have made more than $4,800 in installment payments on a void credit agreement, and have been charged for back-end products packed into an inflated warranty cost.

43. WHEREFORE, the Plaintiff demands judgment for actual damages, treble damages and statutory damages in excess of $15,000, for the award of attorneys fees, if plaintiffs' obtain counsel, pursuant to F.S. section 772.104, together with interest and costs of suit and any other relief the court may deem just and appropriate.

## COUNT TWO: DECEPTIVE TRADE PRACTICE

-Bob Dance, National Auto Finance, Nuvell, Fidelity Warranty Services Inc. and JM&A -

44. Velardo hereby incorporates the averments of paragraphs 1 to 42, as fully as if set forth at length herein.

45. The sale of the automobile at issue in this cause was a consumer transaction within the scope of the Florida Unfair Trade and Deceptive Practices Act (hereinafter AFUTDPA), sections 501.201-501.213, Florida Statutes.

46. Velardo has never been engaged in the business of the sale of used automobiles.

47. Bob Dance and National Auto Finance, derived revenues from the sales of vehicles and back-end products, such as warranties, and car maintenance products, which are purchased by customers of Bob Dance at the time of vehicle purchase.

48. Bob Dance and National Auto Finance received proceeds from the sales of the vehicle and back-end products to Velardo.

49. Bob Dance was involved in the training of finance managers and supervisors and knew that the employees it trained, including those finance managers and supervisors, were responsible for developing finance packages for credit considerations by lenders and for selling warranty packages directly to unsophisticated customers.

50. Bob Dance knew that the employees they trained and supervised had a duty under Florida law not to make false statements for the inducement and sales of these back end products, not to overprice warranties and not to stuff back-end products into transactions without the knowledge and consent of customers.

51. Bob Dance directly monitored the sale of back-end products at the dealership, knew that employees it controlled and supervised were selling back-end products that were concealed in warranty costs, and accepted profits as a result of these sales.

52. By its role of supervision and control of finance managers and supervisors at Bob Dance and sharing in proceeds gained through the fraudulent and deceptive practices, as set forth above, Bob Dance and its managers and supervisors were joint participants in the scheme to pack back-end products into the sale.

53. In engaging in misleading representations, omitting material facts, acts of fraud and deception upon Velardo, for the purpose of force selling these back-end products, (which results ultimately raised the amount financed), Bob Dance and National Auto Finance committed an unfair and deceptive act and practice in connection with the sale of a used automobile to Velardo, in that Bob Dance knew that the customer was being overcharged for a warranty she did not need, (as she still had a remaining 4 years on the original factory bumper to bumper warranty). Such conduct violated state and federal law

54. As a result of the unlawful conduct of Bob Dance, Velardo suffered actual damages, mental anguish, humiliation and inconvenience, which were proximately caused by Bob Dance and National Auto's violations of FUTDPA.

55. WHEREFORE, the Plaintiffs seeks actual damages, compensatory damages in excess of $15,000, reasonable attorneys fees, if attorney is obtained by plaintiff, pursuant to F.S. section 501.2105, together with interest and cost of suit and any other relief the court may deem just and appropriate.

## COUNT THREE: FLORIDA CREDIT DISCLOSURE
-Bob Dance-

56. Velardo hereby incorporate the averments of paragraphs 1 through 54, as fully as if set forth at length herein.

57. By providing advice and assistance to Velardo in obtaining an extension of credit in the purchase of a vehicle, and by receiving money and other valuable consideration in the placement of such vehicle financing, Bob Dance is a credit service organization within the meaning of F.S. section 817.7001(2).

58. As a direct result of Bob Dance failure to accurately represent Velardo's credit application without misleading representations, omitted material facts, and in packing back-end products into the installment sale contract for financing, without the expressed consent of the buyer, Velardo was overcharged in her financing and became a party to a void credit agreement.

59. WHEREFORE, the Plaintiff seeks actual damages, reasonable attorney fees, if attorney is obtained by plaintiff, pursuant to F.S. section 817.706, together with interest and costs of suit and any other relief the court may deem just and appropriate.

## COUNT FOUR: FRAUD

-Bob Dance, National Auto Finance, Fidelity Warranty Services Inc. and JM&A -

60. Velardo hereby incorporates the averments of paragraphs 1 through 58, as fully as if set forth at length herein.

61. Bob Dance made material misrepresentations to Velardo by advising her that her financing was contingent on her accepting an extended warranty and other products into the installment sales contract, and then including that warranty and back-end product into the amount to be financed by National Auto Finance.

62. Bob Dance and its managers associated and conspired with each other to develop a scheme of misrepresentation for customers such as Velardo in the following particulars:

63. Bob Dance advised Velardo to sign blank installment sales forms, contrary to Florida and Federal Truth in Lending Laws.

64. Bob Dance made such material misrepresentations knowing they were untrue and with the intent to induce Velardo to purchase the vehicle and to pay Bob Dance and National Auto Finance profit on the financing and on the back-end products.

65. Velardo, who is not a sophisticated automobile purchaser or experienced in vehicle financing, reasonably relied upon the misrepresentations made by defendants in the sale transaction.

66. As a direct result of Bob Dance's fraud in the inducement of the sale, fraud in the representation of the Cash Price of amount financed and in packing back-end products into the installment sale contract for financing while advising buyer that financing was contingent on her "acceptance of the contract as written", Velardo was overcharged in

their financing and became a party to a void credit agreement, resulting in damages of more than $15,000, as well as mental anguish, humiliation and inconvenience.

67. Bob Dance and National Auto Finance/Nuvell fraudulently inflated the Cash Price Itemization of amount financed in the Truth in Lending Disclosure. The Cash Price was fraudulently inflated by over $593.53 to show $13,895.09 instead of $13,301.56.

68. In total Bob Dance and National Auto Finance/Nuvell defrauded the plaintiff by over $2315.53 in the purchase of the automobile in question of the instant lawsuit.

69. WHEREFORE, the Plaintiff seeks actual damages and compensatory damages, together with interest and cost of suit and, because the fraud as averred is specific, certain and conclusive, the Plaintiff is entitled to, and hereby demands, an award of attorneys fees under prevailing Florida case law if she were to obtain professional counsel to prosecute her complaint, and any other relief the court may deem just and appropriate.

## COUNT FIVE: KNOWING AND WILLFULL VIOLATIONS OF FEDERAL TILA CRIMINAL 15 U.S.C. 1611 & 15 U.S.C. sec. 1641(a).

-Bon Dance, National Auto Finance, Nuvell, Fidelity Warranty Services Inc. and JM&A-

70. Velardo hereby incorporates the averments of paragraphs 1 through 68, as fully as if set forth at length herein.

71. Bob Dance and National Auto Finance knowingly and willfully engaged in the acts alleged in paragraphs 1 through 68 violating Florida Statutes and knowing and willfully violating federal TILA criminal statutes enumerated in paragraphs 1 through 68.

72. As a result of the fraudulent conduct caused by Bob Dance's breach of duty, Velardo was harmed in being fraudulently induced into an automobile sale, in incurring a credit obligation with National Auto Finance, in incurring a larger credit obligation with

National Auto Finance as a result of an overpriced warranty package, fraudulent Cash Price TILA figure and in incurring the cost of a back-end product without being made aware that she could refuse these. That deception and fraud is material in that their advising her that financing was contingent on her "accepting the contract as it was written or not be financed", caused financial loss to the plaintiff.

73. Bob Dance advised Velardo to sign blank installment sales forms, contrary to Florida and Federal Truth in Lending Laws, and which she refused to do.

74. Bob Dance fraudulently inflated the cash price of the vehicle, in the TILA, by over $593.53.

75. This fraud is apparent on the record.

76. As assignee of the retail sales contract which it is financing, National Auto Finance/Nuvell is liable for any violation that is apparent on the face of the contract 15 U.S.C. sec. 1641(a). See: Taylor v. Quality Hyundai, Inc., 150 F.3d 689, 694 (7th Cir. 1998); Green v. Levis Motors, Inc., 179 F.3d 286, 295 (5th Cir. 1999) and Ellis v. General Motors Acceptance Corp., 160 F.3d 703, 709-10 (11th Cir. 1998).

77. Velardo has demanded, by phone and by certified mail, that these add-ons be cancelled. It was not till months later, Velardo received a phone call from "Nuvell" stating that her contracts had been cancelled and that the difference had been deducted from the back end of the retail installment sales contract.

78. Both Nuvell and Bob Dance have completely ignored plaintiff's claims for clarification of the fraudulently exaggerated cash price of the Installment Sales Contract.

79. Velardo has continuously demanded a new or amended Truth in Lending Act disclosure and Installment contract that would reflect the cancellations of these add-ons and correct the fraudulent cash price on the Installment Sales Contract

80. Velardo was never sent a letter that confirmed these deductions, nor did she ever receive a new retail installment contract, nor did she receive a new TILA that would accurately describe the true cash price and therefore her new amount financed and monthly payments.

81. WHEREFORE, the Plaintiffs seeks actual damages, compensatory damages in excess of $15,000, reasonable attorneys fees, if attorney is obtained by plaintiff, pursuant to F.S. section 501.2105, together with interest and cost of suit and any other relief the court may deem just and appropriate.

## COUNT SIX: VIOLATION OF 15 USC 41
### -Bob Dance-

82. Velardo hereby incorporates the averments of paragraphs 1 through 80, as fully as if set forth at length herein.

83. The Federal Trade Commission (FTC) has passed its Used Car Rule under 15 USC 41, which applies in all states except Maine and Wisconsin. Under the Used Car Rule, dealers must prominently post buyer's guides on used vehicles that advises whether the vehicles comes with a WARRANTY and what type or are sold "as is." The buyer's guide must be given to the buyer if the buyer purchases a used vehicle, and it becomes part of

the purchase contract, and its terms override any conflicting terms in the contract. Bob Dance Violated federal law in that it never provided Velardo with any buyers guide whatsoever, even though it was requested more than once by both Mrs. Velardo and her husband.

84. WHEREFORE, the Plaintiffs seeks actual damages, compensatory damages in excess of $15,000, reasonable attorneys fees, if attorney is obtained by plaintiff, pursuant to F.S. section 501.2105, together with interest and cost of suit.

**WHEREFORE**, Plaintiff seeks actual and compensatory damages in excess of fifteen thousand dollars and or free and clear title to vehicle and costs involved with this lawsuit as well as costs of suit and an award of reasonable attorneys fees, if counsel is obtained by plaintiff, pursuant to 15 U.S.C. section 2310(d)(2), and any other relief the court may deem just and appropriate. Plaintiffs also seeks, under separate motion for TRO, a temporary restraining that enjoins the Defendants from repossessing the vehicle, any action of replevin, attempting to sell the vehicle and any further collection actions or state court actions until they properly respond to Plaintiffs civil and criminal allegations against Defendants'.

A JURY TRIAL IS DEMANDED.

Dated this May 19th, 2008

Catherine F Velardo (Pro-se)
867 Paddington Terrace
Heathrow, FL 32746
(407) 771-4467