**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

CATHERINE F. VELARDO and
NELSON J. VELARDO,

    **Plaintiffs,**

-vs-                Case No.  6:08-cv-806-Orl-31DAB

NUVELL AUTO FINANCE, NATIONAL
AUTO FINANCE, FIDELITY
WARRANTY SERVICES, INC., JM&A,
and BOB DANCE AUTOMOTIVE GROUP,

    **Defendants.**

## ORDER

This matter comes before the Court on the Motion to Dismiss (Doc 21) filed by Defendants Fidelity Warranty Services, Inc. ("Fidelity") and JM&A, and the Plaintiffs' Motion for Leave to File a Second Amended Complaint (Doc. 32), which the Court construes, in part, as a response to the Motion to Dismiss.[1]

The instant dispute revolves around a May 2006 transaction, in which Catherine Velardo bought a used car from Defendant Bob Dance Automotive Group ("BDAG").  (Doc. 6 at 4).  The Plaintiffs contend that Catherine Velardo was pressured or tricked into purchasing unneeded additional services (such as warranties and "gap insurance"), which the Plaintiffs refer to as "back-

---

[1] It is not clear that the Plaintiffs intended their motion to serve as a response to the instant motion to dismiss.  It is not denominated as a reply, it does not explicitly reference the motion to dismiss, and it fails to address a number of the arguments raised by Fidelity and JM&A.  However, as the Plaintiffs are representing themselves *pro se*, and as they have not filed anything else that could be construed as a response, the Court will give them the benefit of the doubt and treat it as such.

end products," as a condition for obtaining financing.  (Doc. 6 at 4-5).  The Plaintiffs have sued the dealer and several other entities involved in the transaction, including Fidelity and JM&A, accusing them of violating Florida's civil RICO statute (Count I) and the Florida Deceptive and Unfair Trade Practices Act (Count II), inaccurately representing a credit application (Count III), committing fraud (Count IV), violating the Federal Truth in Lending Act (Count V), and failing to provide a "buyer's guide" pursuant to the Federal Trade Commission's "Used Car Rule" (Count VI).  (Doc. 6 at 8-18).

Fidelity and JM&A assert that only one paragraph of the eighty-four in the Amended Complaint (Doc. 6) contains allegations of wrongdoing as to them directly.  At paragraph 38, the Plaintiffs state: "Fidelity Warranty Services, Inc. and JM&A Group are responsible under the doctrine of respondeat superior for the statutory violations and breaches of fiduciary duty."  (Doc. 6 at 10).  The Plaintiffs do not dispute this characterization.

Fidelity and JM&A argue that the Plaintiffs have failed to state a claim for violation of Florida's RICO statute, because they fail to make it clear which of their many assertions are supposedly a violation of the statute.  Fidelity and JM&A also argue that the Plaintiffs lack standing under a particular provision of the RICO statute, Fla. Stat. § 772.103(1), because they have failed to allege that they suffered an injury as a result of the use or investment of Defendants' alleged RICO proceeds.  The Plaintiffs respond with allegations that Bob Dance paid some of the proceeds of the unneeded additional services over to Fidelity and JM&A.  (Doc. 32 at 13-15).  However, these allegations do nothing to solve either problem identified by those defendants.  They do not clarify which of the many, many allegations in Count I are supposed to be RICO violations.  And Fla. Stat. § 772.103(1) prohibits not just the receipt of proceeds of criminal

activity, but the use or investment of those proceeds to acquire an interest in either real property or the corrupt enterprise, which the Plaintiffs have not alleged. Count I will be dismissed as to these defendants.

Next, Fidelity and JM&A contend that the Plaintiffs have failed to state a cause of action in Count II. They contend that despite the title, which references FDUTPA, the Plaintiffs are really making a claim of fraud in the inducement. Fidelity and JM&A cite the Plaintiffs' allegations within that count of "fraudulent and deceptive practices" and "misleading representations, omitting material facts, acts of fraud and deception for the purpose of force selling these back-end products." (Doc. 6 at 12).

The Plaintiffs do not directly address this argument. Rather, the Plaintiffs seek to "correct" (via filing of a second amended complaint) several paragraphs within Count II. The corrected paragraphs contain allegations that the Defendants all received proceeds from the sale of the back-end products, that the Defendants committed an unfair and deceptive act by providing misleading misrepresentations to sell these products to Catherine Velardo, and that the Plaintiffs suffered an injury as a result of Defendant's violations of FDUTPA.

Fidelity and JM&A have not provided any legal authority to support their argument that the allegations made by the Plaintiffs in Count II could not, as a matter of law, support a claim under FDUTPA. The FDUTPA provides a cause of action against parties that engage in "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce," but it does not define the elements of that cause of action. Fla. Stat. § 501.204(1). A violation of the FDUTPA may be based upon "[a]ny law, statute, rule, regulation, or ordinance which proscribes unfair methods of competition, or unfair,

deceptive, or unconscionable acts or practices." Fla. Stat. § 501.203(3)(c).  Unlike a fraud claim, a party asserting a deceptive trade practice claim need not show reliance on the misrepresentation or omission at issue.  *Davis v. Powertel, Inc.*, 776 So.2d 971, 973 (Fla. 1st DCA 2000).  The movants' attempt to hold the Plaintiffs to the standard for pleading a fraud claim is therefore improper.

As to Count V, in which the Plaintiffs allege a violation of the Truth in Lending Act, the movants point out that there is a one-year statute of limitations for a TILA claim.  15 U.S.C. § 1640(e).  They argue that the alleged harm of which the Plaintiffs complain occurred when Catherine Velardo purchased the used car, and that the instant suit was filed slightly more than two years after that purchase, outside the limitations period.  The Plaintiffs fail to respond to this argument, and the motion will therefore be granted as to this Count.

Fidelity and JM&A also argue that Counts 1, 2, 4, and 5 are examples of "shotgun pleading" and are subject to dismissal as a result.  Generally speaking, shotgun pleadings "are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense."  *Wagner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006).  Shotgun complaints

> invariably begin with a long list of general allegations, most of which are immaterial to most of the claims for relief.  The general allegations are incorporated by reference into each count of the complaint; the complaint is followed by an answer that responds to each and every statement.  If the trial judge does not quickly demand repleader, all is lost – extended and largely aimless discovery will commence, and the trial court will soon be drowned in an uncharted sea of depositions, interrogatories, and affidavits.

*Johnson Enterprises of Jacksonville, Inc. v. FPL Group, Inc.*, 162 F.3d 1290, 1333 (11th Cir. 1998).

> [I]t is much easier in the short term to permit shotgun pleadings – in the hope that the parties will settle their dispute – instead of intervening *sua sponte* to narrow the issues.  In the long term, however, the judicial work that results from shotgun pleading is far more time consuming than the work required up front to prevent the case from proceeding beyond the pleadings until the issues are reasonably well defined.  As we have previously stated, and state once again, district courts have the power and the duty to define the issues at the earliest stages of litigation.

*Id.*

Although not a particularly bad example of the breed, the Amended Complaint possesses the characteristics of a shotgun pleading.  Each count incorporates all of the factual allegations that came before it, no matter the relevance.  As a result, the fraud count contains allegations that the Defendants committed a RICO violation, and the TILA count contains allegations that the Defendants violated FDUTPA.  In addition, the Amended Complaint contains numerous allegations that appear to have no relevance whatsoever.  The Plaintiffs state that one or more of the Defendants violated a fiduciary duty toward the Plaintiffs and are liable for unjust enrichment, but there are no claims for either of these causes of action, and such allegations do not appear to be relevant to the claims actually made by the Plaintiff.  Similarly, the Plaintiffs assert that Defendant BDAG attempted to get Catherine Velardo to sign a blank installment sales contract, but that she refused to do so.  (Doc. 6 at 5).  The Court sees no way in which a failed effort to convince the Plaintiff to do something unwise is relevant to any of the Plaintiffs' causes of action.

Even taking into account the Plaintiffs' *pro se* status, the Court finds that the Amended Complaint does not satisfy Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement" of one's claims showing that the Plaintiffs are entitled to relief, and Rule 10(b), which requires that discrete claims should be plead in separate counts.  *See Magluta v. Samples*, 256 F.3d

1282, 1284 (11th Cir. 2001). The Plaintiffs must weed out the factual and legal irrelevancies in the Amended Complaint.

In consideration of the foregoing, it is hereby

**ORDERED** that the the Motion to Dismiss (Doc 21) is **GRANTED IN PART** and **DENIED IN PART**, as follows: The Amended Complaint is **DISMISSED** as to all parties. On or before August 21, 2008, the Plaintiffs may file a second amended complaint, which must at a minimum comply with Federal Rule of Civil Procedure 8 and Federal Rule of Civil Procedure 10. The second amended complaint shall not raise any claims not already included in the Amended Complaint, and shall not assert a Florida RICO or TILA claim against Defendants Fidelity and JM&A. The Plaintiffs may continue to assert claims against Defendant Bob Dance Automotive Group, but those claims will be automatically stayed pursuant to this Court's previous order (Doc. 33).

Given the resolution of the instant motion, the Plaintiffs' Motion for Leave to File Second Amended Complaint (Doc. 32) is **DENIED AS MOOT**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on August 7, 2008.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party

-6-